[No. 4524–II. Division Two. September 4, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. PHILIP MICHAEL EATON, *Appellant.*

T. *Jeffrey Keane,* for appellant.

*James E. Carty, Prosecuting Attorney, Joan Giller, Deputy, Weber, Baumgartner & Gunn,* and *Ernest L. Nicholson,* for respondent.

REED, C.J.—Defendant Philip Michael Eaton appeals his conviction of second degree burglary. We reverse.

Shortly after 8 p.m. on October 21, 1979, Vancouver police arrested defendant within a few minutes after he broke the glass front door of a state liquor store and removed a few bottles of liquor. He was later charged with second degree burglary.[1] According to the evidence pre-

---

[1]RCW 9A.52.030 provides:

"Burglary in the second degree. (1) A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a building other than a vehicle."

sented at trial, defendant had been drinking heavily throughout the day of October 21. All the witnesses who saw defendant around the time of his arrest agreed that he was intoxicated. Defendant did not deny he entered the liquor store, but he contended he was in an "alcohol blackout" at the time of the break–in and thus was incapable of forming a specific intent to commit a crime, which would constitute a defense to second degree burglary.[2]

Prior to trial, the court authorized an examination of defendant by Dr. Barry Maletzky, a psychiatrist who has studied the effects of alcohol on the brain and who had testified as an expert witness on the subject of alcohol blackouts on several previous occasions. Based largely on two interviews in which defendant recounted his recollection of the events of October 21, the psychiatrist formed an opinion that defendant probably was in an alcohol blackout at the time of the break–in and, if so, was incapable of forming the requisite intent to commit a crime when entering the store.

When the defense proposed to call the psychiatrist as a witness at trial, the court became concerned that, in explaining the basis of his opinion, the psychiatrist would repeat to the jury as hearsay defendant's statements concerning the evening in question, thereby in effect enabling defendant to testify without taking the stand, thus shielding his story from cross–examination. Consequently, the court ruled, over defendant's strenuous objections, that unless defendant first testified about the events of October 21 and subjected himself to cross–examination, the psychiatrist could not base his opinion on defendant's statements

---

[2]RCW 9A.16.090 provides:

"Intoxication. No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his condition, but whenever the actual existence of any particular mental state is a necessary element to constitute a particular species or degree of crime, the fact of his intoxication may be taken into consideration in determining such mental state."

given during the two interviews.[3]

Because the court earlier had ruled that if defendant testified his previous robbery conviction would be admissible for the purpose of impeaching his credibility, defendant was faced with an unenviable choice: he could testify but thereby inform the jury of his previous conviction,[4] or he could exercise his privilege against self–incrimination but thereby forfeit his only viable defense.[5] Defendant decided to take the stand, where on direct examination he testified, among other things, to his previous conviction and to his parole status at the time of the break–in. The psychiatrist then testified, giving his opinion on defendant's mental state at the time of the incident, although somewhat ironically he refrained from repeating any of defendant's state-

---

[3]Apparently, the psychiatrist could not have formed an opinion about defendant's mental state at the time of the break–in without considering defendant's account of the events.

[4]A famous empirical study of the American jury system showed that in a representative sample of cases, defendants without a criminal record were acquitted 42 percent of the time, whereas defendants who the jury knew or suspected had a criminal record were acquitted only 25 percent of the time. H. Kalven & H. Zeisel, *The American Jury* 161 (1966). There is a significant danger that jurors will consider prior convictions admitted for impeachment purposes as substantive evidence of guilt, regardless of instructions to the contrary. *See State v. Alexis*, 95 Wn.2d 15, 621 P.2d 1269 (1980); Note, *To Take the Stand or Not To Take the Stand: The Dilemma of the Defendant With a Criminal Record*, 4 Colum. J.L. & Soc. Probs. 213, 218–19 (1968).

[5]There is presently some confusion in the Washington cases about what evidence a defendant must introduce before he is entitled to an intoxication instruction. *Compare State v. Jones*, 95 Wn.2d 616, 622–23, 628 P.2d 472 (1981), *with State v. Mriglot*, 88 Wn.2d 573, 564 P.2d 784 (1977), *and State v. Tyler*, 77 Wn.2d 726, 742–59, 466 P.2d 120 (1970), *vacated as to imposition of death sentence*, 408 U.S. 937, 33 L. Ed. 2d 756, 92 S. Ct. 2865 (1972). At least prior to *Jones*, and at the time of defendant's trial, the prevailing rule was that there must be evidence in the record of: (1) the fact of drinking, and (2) the effect of the drinking upon the defendant's ability to form the required mental element of the crime, *State v. Boyd*, 21 Wn. App. 465, 471, 586 P.2d 878 (1978), *vacated on other grounds, State v. Holsworth*, 93 Wn.2d 148, 607 P.2d 845 (1980); *State v. Zamora*, 6 Wn. App. 130, 132–34, 491 P.2d 1342 (1971), *review denied*, 80 Wn.2d 1006 (1972). Unless defendant either testified himself or succeeded in introducing the psychiatrist's opinion, he could not have satisfied the second prong of this test.

ments made during the interview in explaining the basis of his opinion. The jury found defendant guilty as charged. He now appeals from that conviction.

Defendant argues that the trial court committed reversible error by requiring him to take the stand before allowing the psychiatrist to base his opinion in part on defendant's statements during the interviews. He notes that ER 703[6] permits an expert witness to base his opinion on facts or data made known to him prior to trial. Moreover, defendant points out that the same rule provides that the facts or data need not be admissible in evidence if they are of a type reasonably relied upon by experts in the particular field. He contends that the psychiatrist's opinion satisfied the requirements of ER 703 and that the proper way to test the reliability of the opinion was through cross–examination of the psychiatrist, not by requiring the defendant to testify. We agree.

■■ After a proper foundation has been laid, an expert may give an opinion regarding a defendant's ability

---

[6]ER 703 provides:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

This rule is identical to Fed. R. Evid. 703. The Judicial Council Task Force comment to the Washington rule provides in part: "Before an expert will be permitted to testify upon the basis of facts not admissible in evidence, the court will have to find pursuant to Rule 104(a) that the particular underlying data is of a kind that is reasonably relied upon by experts in the particular field in reaching conclusions. If there is a serious issue the trial judge will examine the expert outside the presence of the jury to determine whether these conditions are met. Since Rule 703 is concerned with the trustworthiness of the resulting opinion, the judge should not allow the opinion if the expert can show only that he customarily relies upon such material or that it is relied upon only in preparing for litigation. The expert must establish that he as well as others would act upon the information for purposes other than testifying in a lawsuit. Weinstein's Evidence § 703[01] (1975).

"The expert will ordinarily be in the best position to know what data can be reasonably relied upon, and the court will usually follow the expert's advice on the point. The court's decision will, to a large extent, be based on the degree of confidence it has in the professional calibre and ethics of the expert group involved. Physicians are likely to be given more leeway than accidentologists. Id."

to form a specific intent at the time of a crime. *State v. Edmon,* 28 Wn. App. 98, 621 P.2d 1310 (1981); *State v. Martin,* 14 Wn. App. 74, 538 P.2d 873 (1975), *review denied,* 86 Wn.2d 1009 (1976). The sole objection of the prosecutor and the trial court to the foundation for the psychiatrist's opinion in this case was that the opinion would be based on inadmissible out–of–court statements by the defendant to the psychiatrist[7] and that the jury could not properly evaluate the truth of these statements unless defendant took the stand.[8] Under ER 703, however, an

---

[7]On appeal, defendant argues that his statements to the psychiatrist would be admissible as substantive evidence under ER 803(a)(4) if testified to by the psychiatrist. *See United States v. Iron Shell,* 633 F.2d 77, 84 (8th Cir. 1980); *United States v. Lechoco,* 542 F.2d 84, 89 n.6 (D.C. Cir. 1976); *Howe v. State,* 611 P.2d 16, 19–20 (Alaska 1980); 11 J. Moore, *Federal Practice* § 803(4)[8] (1976); 4 J. Weinstein & M. Berger, *Evidence* § 803 (4)[01], at 128–32 (1979); Quinn, *Hearsay in Criminal Cases Under the Colorado Rules of Evidence: An Overview,* 50 Colo. L. Rev. 277, 316 (1979). We do not address the issue, however, because it is unnecessary to do so in light of our resolution of the case and because this theory was not presented to the trial court. Error in the exclusion of testimony by a trial court generally cannot be urged under a theory presented for the first time on appeal. *Grein v. LaPoma,* 54 Wn.2d 844, 850, 340 P.2d 766 (1959). *See* RAP 2.5(a). Therefore, for purposes of this analysis, we will assume, without deciding, that the statements to the psychiatrist were not admissible in evidence.

[8]The following exchange at trial illustrates well the issue presented:

"[Prosecutor]: But the problem is, I don't have any problem with Maletzky, the problem is, there is no way for me to cross–examine the information upon which Dr. Maletzky relies.

"[Defense counsel]: That's too bad, under this evidence rule that's just how it goes.

"THE COURT: Well, I think you have a pretty liberal one–sided view of the evidence rule.

"[Defense counsel]: I really disagree, Your Honor, I think you can equivocate if that's what the story was, but it doesn't equivocate at all. The factors stated need not be admissible in evidence. It's hearsay, it's not admissible in evidence as hearsay. It doesn't need to be admissible under evidence rule 703.

"THE COURT: There is a history behind the rule, especially with respect to medical reports, but—what the history is, at least as I understand it simply with respect to medical treating physicians is that there is no motive to falsify on behalf of the patient because they go to the doctor for treatment and that their history is thought to be reliable since they're there to seek the assistance of a doctor to treat them for injury, disease or defect or whatever it is. But here we have, we're going to take a doctor simply to present a defense in a criminal case and for no other reason. And what troubles me is the motive to falsify, the lack of

expert's opinion may be based upon data not admissible in evidence so long as the data is of a kind that is reasonably relied upon by experts in the particular field in reaching conclusions. Therefore, under the rule it is of no moment that defendant's statements in the psychiatric interviews might be inadmissible hearsay, *if* a psychiatrist could reasonably rely upon them in forming an opinion about defendant's mental condition at the time of the crime.

The trial court in effect ruled that the psychiatrist could not "reasonably" rely on defendant's account of the incident until he had heard defendant testify under oath and subject to cross–examination. We believe that ruling was inconsistent with the thrust of ER 703 and thus was erroneous. Although the determination of what data could reasonably be relied upon is ultimately for the court, the expert ordinarily is better qualified to make this decision in his field of expertise than is the judge, and if the judge is satisfied with the expert's general qualifications to express an opinion he usually should defer to the expert's advice on that point. ER 703, Judicial Council Task Force Comment; 5 R. Meisenholder, Wash. Prac. § 357 (Supp. 1979); McElhaney, *Expert Witnesses and the Federal Rules of Evidence,* 28 Mercer L. Rev. 463, 482 & n.83 (1977). We recognize, as did the trial court, that the probative value of expert medical testimony may be lessened when it is based on subjective symptoms and narrative statements given by a defendant after he has been charged with a crime. *See United States v. Dresser,* 542 F.2d 737, 742 (8th Cir. 1976). The assumption underlying ER 703, however, is that opposing counsel will forcefully bring that point to the jury's attention during cross–examination of the expert. *See* ER 705; Smith & Henley, *Opinion Evidence: An Analysis*

---

trustworthiness of the information is there in the classical hearsay sense that it wouldn't be when you see a treating physician.

"Now, whether Dr. Maletzky or any other doctor is able to weed that out and make his—give his opinion, I don't know, or whether he weighs the motives of the defendant, Mr. Eaton, or any other defendant might have to falsify their story or the information they give him."

*of the New Federal Rules and Current Washington Law,*
11 Gonz. L. Rev. 692, 699 (1976). Jurors are quite aware
that a criminal defendant may be motivated to fabricate a
defense and are unlikely to be influenced unduly by an
expert opinion that is shown to rest on questionable sources
of information. Moreover, experienced forensic psychia-
trists are equally aware of the danger of fabrication and are
trained to detect untruthful answers to their questions. *See*
11 J. Moore, *Federal Practice* § 803(4)[8] (1976); Bonnie &
Slobogin, *The Role of Mental Health Professionals in the
Criminal Process: The Case for Informed Speculation,* 66
Va. L. Rev. 427, 504–11 (1980); Diamond & Louisell, *The
Psychiatrist as an Expert Witness: Some Ruminations and
Speculations,* 63 Mich. L. Rev. 1335, 1353 (1965).[9]

▮ Since we conclude that the trial court erred in
requiring defendant to testify before permitting the psychi-
atrist to do so, we next must determine whether the error
nevertheless was harmless. An accused cannot avail himself
of error as a ground of reversal unless it has been prejudi-
cial. *State v. Rogers,* 83 Wn.2d 553, 520 P.2d 159 (1974). A
prejudicial error is one that affects or presumptively affects
the final result of the trial. *State v. Edwards,* 93 Wn.2d
162, 606 P.2d 1224 (1980). An error of constitutional pro-
portions will not be held harmless unless the appellate
court is able to declare a belief that it was harmless beyond
a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 17
L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967); *State
v. Burri,* 87 Wn.2d 175, 550 P.2d 507 (1976); *State v. Var-
gas,* 25 Wn. App. 809, 610 P.2d 1 (1980). An error of non-
constitutional magnitude is not cause for reversal unless the

---

[9]For example, Dr. Maletzky testified as follows:

"Q Is it a generally accepted practice in medicine to make an opinion diagnosis on the basis of what a patient tells you?

"A Yes.

"Q Is the same true in your subspecialty of psychiatry?

"A Yes, I think we learn in medical school that 80 percent of the diagnosis is based on the history. And I think that we always try to see if there is any evidence that person isn't telling us the truth, and quite often, that can happen not only in psychiatry, but in any medical specialty."

appellate court can conclude that, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred. *State v. Cunningham*, 93 Wn.2d 823, 613 P.2d 1139 (1980).

 Defendant contends that the trial court's error denied him a fair trial because, as a result of the error, he was compelled to testify against his will and then was impeached with his prior conviction. Consequently, he argues, citing *Chapman,* that we should not affirm his conviction unless we can determine beyond a reasonable doubt that he would have been convicted despite the error.[10] We are not entirely certain which harmless error standard should be applicable in this case. Because the trial court's ruling can be characterized as merely one conditionally excluding evidence, arguably the nonconstitutional standard should apply. On the other hand, the ruling placed a significant burden on defendant's constitutional privilege against self–incrimination. Whether the ruling resulted in an actual violation of defendant's Fifth Amendment rights is an important and perhaps difficult question.[11] Since the

---

[10]The State has presented no argument on the issue of harmless error.

[11]*See Brooks v. Tennessee,* 406 U.S. 605, 32 L. Ed. 2d 358, 92 S. Ct. 1891 (1972) (statute requiring any defendant desiring to testify to do so before any other testimony for the defense violated defendant's privilege against self–incrimination); *Harrison v. United States,* 392 U.S. 219, 20 L. Ed. 2d 1047, 88 S. Ct. 2008 (1968) (defendant's testimony at former trial, arguably induced by erroneous introduction into evidence of illegally obtained confessions, could not be introduced against defendant in prosecution's case in chief in subsequent trial); *Simmons v. United States,* 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968) (defendant's testimony at pretrial hearing to establish his standing to object to an unconstitutional search could not be used against him at trial to prove his guilt); *Jones v. United States,* 243 A.2d 679 (D.C. 1968) (requiring defendant to take witness stand and be sworn as witness before jury as a condition to ruling on extent to which he could be impeached by criminal record was prejudicial error). *But see McGautha v. California,* 402 U.S. 183, 28 L. Ed. 2d 711, 91 S. Ct. 1454 (1971) (unitary trial in capital case at which both guilt and penalty were determined in one proceeding did not violate defendant's privilege against self–incrimination, where defendant yielded to pressure to testify on issue of punishment at risk of damaging his case on issue of guilt); *State v. Van Auken,* 77 Wn.2d 136, 460 P.2d 277 (1969) (defendant's privilege against self–incrimination was not violated merely because he felt need to take the stand to explain or con-

parties have not briefed the issue, however, we decline to address it further. A reviewing court should not pass on constitutional matters unless absolutely necessary to the determination of the case. *State v. Claborn,* 95 Wn.2d 629, 628 P.2d 467 (1981). We believe the error was prejudicial, even under the nonconstitutional harmless error standard. Therefore, we need not decide whether the error was of constitutional magnitude.

Having reviewed the evidence of this case, we believe defendant's testimony was of little value to his defense of intoxication. His testimony during direct examination focused largely on the details of his drinking during the day of the incident. Other witnesses, however, including those called by the State, had already established that he was quite intoxicated at the time of the incident. In contrast, the State's case was bolstered significantly by defendant's testimony. His prior robbery conviction was revealed to the jury as a result of his taking the stand. Furthermore, the prosecutor effectively cross–examined defendant concerning his state of mind before the break–in and after his arrest. In all likelihood, the jurors' verdict depended greatly on their assessment of defendant's credibility. A negative assessment of his credibility conceivably would have influenced the weight the jury gave to the opinion of Dr. Maletzky, defendant's key witness. In these circumstances, we must conclude that the additional evidence placed before the jury as a result of the court's error probably had an effect on the verdict. *See State v. Mack,* 80 Wn.2d 19; 490 P.2d 1303 (1971).

In view of our disposition of the case, we need not address defendant's other assignments of error. The judg-

tradict admissible but damaging evidence); *State v. Savage,* 22 Wn. App. 659, 591 P.2d 851 (1979), *rev'd on other grounds,* 94 Wn.2d 569, 618 P.2d 82 (1980) (requiring defendant's assurance that he would testify so that certain evidence would be made relevant as a condition to permitting evidence to be presented out of order did not deny defendant the right to remain silent). *See generally* Westen, *Incredible Dilemmas: Conditioning One Constitutional Right on the Forfeiture of Another,* 66 Iowa L. Rev. 741 (1981).

ment is reversed and the case is remanded for a new trial.

PETRIE and PETRICH, JJ., concur.