# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,  )
                      )    No. 71669-7-I
          Respondent, )
                      )    DIVISION ONE
       v.             )
                      )    UNPUBLISHED OPINION
TIMOTHY GREG O'HAVER, )
                      )
          Appellant.  )    FILED: July 7, 2014

TRICKEY, J. — The exclusion of irrelevant evidence does not bar an accused from the constitutional right to present a defense. Here, the trial court instructed the jury on self-defense and permitted the defendant to present evidence of the circumstances surrounding the incident to support his theory of self-defense. The trial court did not err in its evidentiary rulings or in its refusal to grant a new trial. Accordingly, we affirm.

## FACTS

Timothy O'Haver came home from work. He and his wife consumed several drinks of vodka and juice. After a couple of hours, they began arguing.[1] During the argument, O'Haver grabbed his wife and sprayed her with the hose from the kitchen sink. She slipped on the water and fell to the floor.[2] The wife ran out of the house.

The neighbor next door, and his friends John Hoover and John Humen, witnessed O'Haver chasing his wife outside. The wife either fell or O'Haver pushed her down.[3] O'Haver then struck his wife, although the accounts varied whether he

---

[1] 4 Report of Proceedings (RP) at 197, 224.
[2] 4 RP at 231.
[3] 4 RP at 247, 272; 5 RP at 345.

did so with an open hand or a fist.[4] O'Haver grabbed his wife and went back into their home, closing the door.[5]

The three continued to hear screaming coming from the O'Haver house. The neighbor entered the house through a back door.[6] The neighbor testified that he distracted O'Haver by insulting him in an attempt to get O'Haver to focus on him so that the wife could escape.[7] The wife left and O'Haver pushed the neighbor. When O'Haver grabbed a gun, the neighbor fled to his house with O'Haver running behind him.[8]

The neighbor called for his wife to get the "old lady," a term used by the neighbors for their gun in the event of an emergency.[9] The neighbor's wife retrieved the gun and gave it to her husband.[10] O'Haver testified that he was aware of the neighbors' code for their gun and that he feared for his wife's safety. The wife told O'Haver that she was in the house on her own free will and told him to go home and sleep it off.[11]

O'Haver banged on the neighbor's front door with a baseball bat trying to get inside. In the process, he broke the door. O'Haver also attempted to enter through windows around the house while shouting for his wife.[12] O'Haver testified that he ran back to his house to retrieve his guns[13] when the neighbor threatened

---

[4] 4 RP at 272; 5 RP 349.
[5] 5 RP at 347.
[6] 5 RP at 349.
[7] 5 RP at 352.
[8] 5 RP at 355-56.
[9] 5 RP at 302, 355.
[10] 5 RP at 356.
[11] 5 RP at 304.
[12] 5 RP at 307.
[13] O'Haver owned two handguns and a shotgun. 4 RP at 197.

to shoot him through the door. O'Haver reached through the broken front door hitting the neighbor with his gun.[14]

The police arrived at the scene. Both parties dropped their weapons. The police arrested O'Haver. The State introduced evidence of the neighbor's broken door and the broken baseball bat.

The State charged O'Haver with four counts of assault, but a jury found him guilty of only two: second degree assault of the neighbor and a lesser included count of fourth degree assault of the wife. O'Haver appeals alleging multiple evidentiary errors.

## ANALYSIS

### Exclusion of Evidence

O'Haver contends that the trial court violated his constitutional right to present a defense when it excluded evidence that both his neighbor and his wife had committed prior acts of violence. He argues that this evidence corroborated his account that he feared both of them and was therefore acting in self-defense.

Both the Sixth Amendment of the federal constitution and article I, section 22 of the Washington Constitution guarantee an accused the right to present a defense. State v. Jones, 168 Wn.2d 713, 230 P.3d 576 (2010). However, this right is not absolute; a defendant does not have the right to introduce evidence that is irrelevant or otherwise inadmissible. State v. Stacy, __ Wn. App. __, 326 P.3d 136, 143 (2014) (citing State v. Rehak, 67 Wn. App. 157, 162, 834 P.2d 651 (1992)). "Evidence is relevant if it has any tendency to make any fact that is of

---

[14] 5 RP at 359.

3

consequence to the case more or less likely than without the evidence." State v. Mee Hui Kim, 134 Wn. App. 27, 41, 139 P.2d 354 (2006) (citing State v. Thomas, 150 Wn.2d 821, 857, 83 P.3d 970 (2004); ER 401).

In general, evidence of a person's character is inadmissible to prove "conformity therewith on a particular occasion." ER 404(a). However, an exception to this rule provides that "[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused" is admissible. ER 404(a)(2). Thus, where a defendant asserts self-defense, evidence of the victim's violent disposition is a pertinent character trait because it is relevant to the question of whether the victim acted in conformity with his or her character by provoking the incident as the first aggressor. State v. Alexander, 52 Wn. App. 897, 900, 765 P.2d 321 (1988); United States v. Keiser, 57 F.3d 847, 853-54 (9th Cir. 1995). Evidence offered for this purpose is subject to the restrictions set forth in ER 404 and 405. Only the victim's reputation for violence is admissible; specific acts of violence are not. ER 405(a), (b); Alexander, 52 Wn. App at 901. O'Haver did not seek a first aggressor instruction and none was given.

Evidence regarding the victim's violent character may also be relevant to show the defendant's state of mind; in other words, the reasonableness of his or her belief that the use of force was necessary in self-defense. State v. Dyson, 90 Wn. App. 433, 438-39, 952 P.2d 1097 (1997) ("To establish self-defense, a defendant must produce evidence showing that he or she had a good faith belief in the necessity of force and that that belief was objectively reasonable."). Under those circumstances, because the character evidence is used to show state of

4

mind rather than to show the victim acted in "conformity therewith," the restrictions of ER 404 and 405 do not apply. Keiser, 57 F.3d at 853. Evidence of specific acts is admissible provided the defendant was aware of the acts at the time. State v. Walker, 13 Wn. App. 545, 549-50, 536 P.2d 657 (1975).

At trial, the State objected to O'Haver's testimony that his wife had struck him during a prior incident in 2007.[15] O'Haver submitted an offer of proof that the incident with his wife occurred during a stressful time while the parties were in the midst of a foreclosure. Alcohol also played a part in that incident. O'Haver woke up the next morning with a red eye.[16] Because the 2007 incident was supported only by O'Haver's testimony, with no independent witnesses, no history of restraining orders or domestic violence orders entered against either party and occurred over five years ago, with no charges filed, the court found the evidence remote, unreliable, and insufficient to establish a claim of self-defense for this particular incident.[17]

O'Haver then argues that the trial court erred in preventing him from testifying about his wife being fired from her crossing-guard job because she allegedly smashed a window of a car whose driver failed to follow her directions.[18] He argues that the evidence was admissible under ER 404(b) to show her quarrelsomeness[19] and thus her propensity for violence.[20] Because O'Haver was

---

[15] 6 RP at 455.
[16] 6 RP at 464.
[17] 6 RP at 460-61, 480.
[18] 6 RP at 465-66.
[19] 6 RP at 464-65.
[20] 6 RP at 466.

not the object of that incident, the court found the evidence irrelevant and prejudicial.[21] The court did not err in finding the evidence inadmissible.

O'Haver also related, in his offer of proof, testimonial evidence of various scenarios demonstrating the neighbor's propensity to become violent. O'Haver related two instances in which the neighbor illegally discharged a gun in the neighborhood.[22] O'Haver did not witness either incident.[23] The neighbor also told O'Haver that he had killed a man but did not supply any specific details; however, O'Haver admitted that he did not fully believe it to be true.[24] O'Haver next asserted that his neighbor described himself as having an inability to control himself when aroused by the sight of blood.[25] This "blood lust" allegedly caused the neighbor to viciously beat another person.

The court found the statements unreliable and not supportive of a claim of self-defense. O'Haver also related an incident in which the neighbor had a reaction with the medication he was taking that caused him to become violent with his spouse one night.[26] No expert testimony was presented or offered to substantiate the claim that the neighbor's medication caused him to be violent. Finding that O'Haver had not established a foundation, the court ruled the evidence inadmissible. The court specifically stated that its ruling did not limit O'Haver from

---

[21] 6 RP at 480.
[22] 6 RP at 467.
[23] 6 RP at 469, 476.
[24] 6 RP at 472.
[25] 6 RP at 472-73.
[26] 6 RP at 476.

testifying regarding any apprehension or fear that he experienced at the time of the incident to support his self-defense argument.[27]

Defense counsel filed a motion for reconsideration regarding the court's denial. After hearing oral argument, the court reiterated its ruling with regard to the acts of the wife, that the 2007 incident was remote, and that the allegation that she broke a car windshield did not establish a reputation for violence in the community.[28]

With regard to the allegations of the neighbor's violent persona, the court found no indicia of reliability that could create a subjective intent on the part of O'Haver to create apprehension and fear. This was particularly true, here, where O'Haver testified that he returned to his home to retrieve his pistol and shotgun. Additionally, O'Haver's alleged fear for his wife is contradicted by the testimony that the wife said she was there on her own free will and that she clung to the neighbor's spouse. Under these facts, the trial court properly found no corroborating circumstances existed to show that these past instances would support O'Haver's theory that his wife was abducted.

O'Haver's reliance on State v. Wanrow, 88 Wn.2d 221, 224, 559 P.2d 548 (1977) for support that the evidence should have been admitted here is misplaced. The court in Wanrow involved instructional error where the jury was misadvised as to the particular circumstances it could consider in reaching a decision. As stated in State v. Martin, 169 Wn. App. 620, 628-29, 281 P.3d 315 (2012), review denied, 176 Wn.2d 1005, 297 P.3d 68 (2013):

> Thus, where a defendant claims self-defense, courts have admitted evidence of a victim's prior acts of violence to establish a defendant's

---

[27] 6 RP at 484.
[28] 7 RP at 572.

reason for apprehension and the basis for acting in self-defense. [State v. Cloud, 7 Wn. App. 211, 218, 498 P.2d 907 (1972).] But in self-defense cases, "[s]pecific act character evidence relating to the victim's alleged propensity for violence is not an essential element of self-defense." [State v. Hutchinson, 135 Wn.2d 863, 887, 959 P.2d 1061 (1998).][29]

Here, the court permitted general references to the volatile spousal relationship. O'Haver testified that he sprayed his wife with water to calm her down after she had attacked him. O'Haver additionally testified that his neighbor entered his home uninvited and taunted him to support his objective belief that he needed to defend himself. The court was correct in ruling that any evidence of misconduct the night of the incident was admissible. The court instructed the jury on self-defense and no duty to retreat.[30]

O'Haver had an opportunity to fully present his theory of the case that he acted out of fear for himself and fear for his wife. The excluded evidence did not violate O'Haver's right to present a defense. The State argues that O'Haver was not entitled to a self-defense instruction, but fails to cross-appeal the court's giving that instruction. Accordingly, we will not address the State's argument.

Mistrial

O'Haver moved for a mistrial contending that the trial court alerted the jury to O'Haver's custodial status. This court reviews a trial court's denial of a motion for a mistrial under an abuse of discretion standard and will only grant a new trial when a "defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly." State v. Lewis, 130 Wn.2d 700, 707,

---

[29] (Alteration in original.)
[30] Clerk's Papers (CP) at 152.

927 P.2d 235 (1996). This court reviews alleged violation of the right to an impartial jury and the presumption of innocence de novo. State v. Johnson, 125 Wn. App. 443, 457, 105 P.3d 85 (2005). Curative instructions can sufficiently overcome any prejudice that might have otherwise arisen from inadvertent observations of a defendant in shackles. State v. Rodríguez, 146 Wn.2d 260, 270, 45 P.3d 541 (2002). When an error can be cured by a curative instruction, a defendant waives the error by failing to request such an instruction. Rodriguez, 146 Wn.2d at 271. Here, the court simply asked the officer, who had been attending court every day, whether he would be there at 9:00 a.m. This is not sufficient to conjure up the image of custody. The court denied the motion for mistrial; but in an abundance of caution, offered to give a curative instruction which O'Haver rejected.[31]

O'Haver's reliance on State v. Gonzalez, 129 Wn. App. 895, 120 P.3d 645 (2005) is misplaced. There, the trial court informed the jury that the defendant was in jail because he could not post bail, was being transported in restraints, and would be under guard in the courtroom. Gonzalez, 129 Wn. App. at 899. The facts here are simply not that egregious. Any prejudice that may have resulted from the jury's knowledge of O'Haver's custodial status is unlikely to have impacted the outcome of his trial. The trial court did not abuse its discretion.

ER 404(b)

Prior to trial, O'Haver moved to exclude evidence of other crimes that had been prosecuted. The State responded that it was not seeking to admit any prior bad acts under ER 404(b). At trial, John Hoover, one of the witnesses who testified

---

[31] 8 RP at 649.

that he saw O'Haver strike his wife, stated that the neighbor said, "I can take care of this. This is my neighbors, and they've done this before."[32] The next day the prosecutor brought Hoover's testimony to the attention of the court because it violated the motions in limine.[33] Because a curative instruction would call the jury's attention to it, defense counsel told the court it would not request one.[34]

The erroneous admission of ER 404(b) evidence is harmless absent a reasonable probability that the error materially affected the outcome of the trial. State v. Halstien, 122 Wn.2d 109, 127, 857 P.2d 270 (1993). "Improper admission of evidence constitutes harmless error if the evidence is of minor significance in reference to the evidence as a whole." State v. Neal, 144 Wn.2d 600, 611, 30 P.3d 1255 (2001). Unlike the cases cited by O'Haver, where the admission of prior bad acts may have led jurors to convict based on propensity given the lack of other credible evidence, here, it is unlikely that this single vague reference to O'Haver's previous combative conduct would affect the verdict, particularly given the additional ample evidence of guilt, i.e., the wife's bruising, the broken bat, the broken door, and the use of the guns. See State v. Escalona, 49 Wn. App. 251, 254-55, 742 P.2d 190 (1987).

O'Haver fails to establish that the testimony amounts to a serious trial irregularity requiring a mistrial. "An irregularity in trial proceedings is grounds for reversal when it is so prejudicial that it deprives the defendant of a fair trial." State v. Condon, 72 Wn. App. 638, 647, 865 P.2d 521 (1993). To determine whether a

---

[32] 4 RP at 273.
[33] 5 RP at 292-93.
[34] 5 RP at 293.

trial irregularity deprived a defendant of a fair trial, a reviewing court considers the following factors: "(1) the seriousness of the irregularity, (2) whether the statement in question was cumulative of other evidence properly admitted, and (3) whether the irregularity could be cured by an instruction to disregard the remark, an instruction which a jury is presumed to follow." Escalona, 49 Wn. App. at 254 (citing State v. Weber, 99 Wn.2d 158, 165-66, 659 P.2d 1102 (1983)). A reviewing court views claims of prejudice "against the backdrop of all the evidence." Escalona, 49 Wn. App. at 254.

While a violation of an order in limine is considered a serious trial irregularity, not all violations of orders in limine have been held to be so serious as to deprive the defendant of a fair trial. See State v. Thompson, 90 Wn. App. 41, 46-47, 950 P.2d 977 (1998) (remark "was sufficiently serious because it violated a motion in limine," but "not so egregious as to deny . . . a fair trial"); Condon, 72 Wn. App. at 649-50. In Condon, the State's witness twice testified that the defendant had been in jail despite an order in limine excluding such evidence, but the court held that while the remarks had the potential for prejudice, they were not so serious to warrant a mistrial. Condon, 72 Wn. App. at 648-50. The court noted that the reference to being in jail was ambiguous and did not necessarily indicate a propensity to commit the crime charged, nor did it necessarily mean that the defendant had been convicted of a crime. Condon, 72 Wn. App. at 649. The court also noted that the curative instruction alleviated any resulting prejudice, and that unlike in Escalona, it was not a "close case," as the evidence against Condon was strong. Condon, 72 Wn. App. at 650 n.2.

11

Viewed in context and against the backdrop of all the evidence, Hoover's remark was likewise not so serious as to deprive O'Haver of a fair trial. While no curative instruction was given and, in fact, as noted above, was specifically not requested, the remark was sufficiently vague about what incident was being described and even if O'Haver was committing a crime. At most, the jury could infer he was involved in marital discord, but that was obvious from other testimony. Thus, as in Condon, the improper remark was ambiguous enough that it did not necessarily suggest a propensity to commit the crime charged. The remark did not warrant a new trial.

Prosecutorial Misconduct

O'Haver argues that he was unfairly prejudiced by the prosecutor's statement that he had to check with his "victim advocate" before determining whether he had any redirect questions for Hoover.[35] In response to the court's question "who," the prosecutor indicated that the advocate in this instance was his notes, a piece of paper.[36] The prosecutor then asserted that he had no further questions. O'Haver did not object to the statement.

Prosecutorial misconduct requires a showing that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and circumstances at trial. State v. Hughes, 118 Wn. App. 713, 727, 77 P.3d 681 (2003) (citing State v. Stenson, 132 Wn.2d 668, 718, 940 P.2d 1239 (1997)). Prejudice is established if there is a substantial likelihood the misconduct affected the jury's verdict. Where no objection is made to the remarks, the reviewability of

---

[35] 4 RP at 283.
[36] 4 RP at 283-84.

the alleged misconduct depends on whether the prosecutor's conduct was "'so flagrant and ill-intentioned'" as to create prejudice that could not be negated by a curative instruction. State v. Warren, 165 Wn.2d 17, 43, 195 P.3d 940 (2008) (quoting State v. Brown, 132 Wn.2d 529, 561, 940 P.2d 546 (1997)).

O'Haver contends that this comment was in fact a statement about the victim Hoover's testimony and its credibility. O'Haver's arguments are unpersuasive. The defendant must make a plausible showing that the error "had practical and identifiable consequences [at] trial." State v. Lynn, 67 Wn. App. 339, 345, 835 P.2d 251 (1992). The prosecutor's nonsensical comment was not a comment on Hoover's truthfulness. This is particularly true here because the jury returned a not guilty finding to the assault charge with Hoover as the victim.

Officer Welsh's Testimony

Officer Welsh testified that he was working another sector that evening.[37] In response to a query of whether police were permitted to go into different sectors, Officer Welsh replied affirmatively, "Given the nature of the call, often very violent crimes, we cross boundaries just to help out because oftentimes it takes more than two or three officers to take care of a serious incident."[38] When asked if he recalled why he was called out, Officer Welsh responded:

> I do. It was supposed to be a domestic violence incident involving a weapon with someone actively pursuing another party attempting to possibly harm them.[39]

---

[37] 4 RP at 159.
[38] 4 RP at 159.
[39] 4 RP at 159-60.

Upon arriving at the scene, neighbors told him that "they heard loud verbal arguing, yelling coming from the north."[40] Officer Welsh continued in that direction and heard someone saying "'come out' and something to the fact of 'I was going to kill you' or 'I'm going to kill you.'"[41] Officer Welsh saw a suspect, later identified as O'Haver, with his right leg raised as though he had just kicked the door.[42] Officer Welsh also observed a black semiautomatic handgun in O'Haver's right hand.[43] When asked whether he identified himself, Officer Welsh responded:

> I did. At this point it was -- like I said, this was a very serious incident. Witnesses have already stated that someone is attempting to take a life. My views from on scene, very aggressive, holding a firearm, pointing it in the direction of possible victims. It was a very serious incident.[44]
>
> At that point, we're not required to identify ourselves before we take action. At that point I had already drawn down on the suspect.

Officer Welsh further testified, without objection, that he had drawn his gun because

> it's a very serious incident. We have a person attempting to -- possibly attempting to take another life, witness statements already indicating that that's what the scenario was before we arrived, and that those parties were able to be separated.[45]

On appeal, O'Haver argues for the first time that Officer Welsh's testimony was an opinion of O'Haver's guilt. O'Haver's reliance on State v. Kirkman, 159 Wn.2d 918, 928, 155 P.3d 125 (2007) is misplaced. There, the defendants claimed

---

[40] 4 RP at 160.
[41] 4 RP at 164.
[42] 4 RP at 164.
[43] 4 RP at 165.
[44] 4 RP at 165-66.
[45] 4 RP at 166.

for the first time on appeal that testimony by detectives and a physician constituted improper opinion evidence regarding victim credibility. The Kirkman court held that testimony of an investigating officer does not necessarily give rise to a manifest constitutional error where there has been no objection at trial. 159 Wn.2d at 938. As noted by Kirkman, 159 Wn.2d at 936:

> Admission of witness opinion testimony on an ultimate fact, without objection, is not automatically reviewable as a "manifest" constitutional error. "Manifest error" requires a nearly explicit statement by the witness that the witness believed the accusing victim.

In Kirkman, as here, the jurors received instructions that they were not bound by witness opinions, but were to form their own opinion as to credibility.[46] Kirkman, 159 Wn.2d at 937. O'Haver likewise fails to establish prejudice.

In determining whether statements are impermissible opinion testimony, courts consider the circumstances of the case, the type of witness, the nature of the testimony, the nature of the charges, the type of defense, and other evidence before the trier of fact. State v. King, 167 Wn.2d 234, 331-33, 119 P.3d 642 (2009). While it is true that an officer's testimony carries a special aura of reliability, here, the testimony did not constitute an opinion on O'Haver's guilt. The officer was merely recounting inferences of fact-based observations. See State v. Blake, 172 Wn. App. 515, 525-26, 298 P.3d 769 (2012) (testimony that includes inferences of fact-based observations admissible), review denied, 177 Wn.2d 1010, 302 P.3d 180 (2013).

---

[46] CP at 125.

In sum, Officer Welsh's testimony did not comment on the guilt or innocence of O'Haver and thus did not invade the province of the jury.

Recorded Recollection

The wife testified that she was confused and scared and just wanted to be left alone the night of the incident. She did not remember having a conversation with Officer Welsh and did not remember giving the police statements about the events.[47]

Because the wife testified she could not recall what she had said to the officer, the court admitted Officer Welsh's police report as a recorded recollection of what the wife had told him.[48] ER 803(a)(5) provides an exception to the hearsay rule for recorded recollections where such recorded recollection is

> [a] memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness'[s] memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

The court's determination that the statement was admissible was correct. However, Officer Welsh's testimony varied from the report and O'Haver objected.[49] The particular statement that O'Haver objected to was the description that O'Haver threw his wife down, rather than held his wife down.[50] When the jury returned, the court sustained O'Haver's objection regarding Officer Welsh's description of the

---

[47] 4 RP at 210.
[48] 5 RP at 318-19.
[49] 5 RP at 330.
[50] 5 RP at 331-32.

alleged victim being thrown against the cabinets.[51] The court struck the testimony and directed the jury to disregard the comment as it was not an accurate rendition of what was said.[52] Officer Welsh testified thereafter by reading directly from his written report.

Decisions regarding evidentiary issues lie within the sound discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion. State v. Castellanos, 132 Wn.2d 94, 97, 935 P.2d 1353 (1997). Thus, under ER 803(a)(5), an audio recording has been held admissible where the proponent demonstrates:

> (1) the record pertains to a matter about which the witness once had knowledge, (2) the witness has an insufficient recollection of the matter to provide truthful and accurate trial testimony, (3) the record was made or adopted by the witness when the matter was fresh in the witness's memory, and (4) the record reflects the witness's prior knowledge accurately.

State v. White, 152 Wn. App. 173, 183, 215 P.3d 251 (2009). The fourth requirement can be satisfied with the "witness'[s] direct averment of accuracy at trial." State v. Alvarado, 89 Wn. App. 543, 551, 949 P.2d 831 (1998). A witness need not swear or sign under penalty of perjury the accuracy of the statement. See State v. Nava, 177 Wn. App. 272, 274, 311 P.3d 83 (upholding the admission of a witness's unsworn tape-recorded statement as a recorded recollection, even in the face of the witness's disavowal), review denied, 179 Wn.2d 1019, 318 P.3d 279 (2013).

---

[51] 5 RP at 335.
[52] 5 RP at 335-36.

The trial court did not err in admitting the recollection. On the stand, the wife repeatedly denied making statements to the officer, responding "[n]o" to the following questions:

> Q. Do you remember giving them statements about what happened?
> A. No.
> Q. Do you ever remember asking them not to arrest your husband?
> A. No.
> . . . .
> Q. Do you remember talking to [O]fficer Jimmy Welsh that night about what happened?
> A. No.[53]

The trial court did not abuse its discretion in finding that the foundation for admitting the evidence was satisfied.

O'Haver's argument that Officer Welsh's embellishment of the report in his initial testimony is not persuasive because the court struck Officer Welsh's inaccurate response to the question and the court properly instructed the jury to disregard that testimony. A jury is presumed to follow the directions of the court, so no harm was present. State v. Gamble, 168 Wn.2d 161, 178, 225 P.3d 973 (2010).

Cumulative Error

O'Haver argues that cumulative error denied him a fair trial. We disagree. While some errors "standing alone, might not be of sufficient gravity to constitute grounds for a new trial, the combined effect of the accumulation of errors" may require a new trial. State v. Coe, 101 Wn.2d 772, 789, 684 P.2d 668 (1984). Because no prejudicial error occurred, the cumulative error doctrine is not applicable to this case. State v. Greiff, 141 Wn.2d 910, 929, 10 P.3d 390 (2000).

---

[53] 4 RP at 210.

Statement of Additional Grounds

O'Haver filed a statement of additional grounds asserting that there were multiple abuses of discretion by the trial court regarding prosecutorial misconduct. These allegations are encompassed in his direct appeal and will not be addressed again here.

O'Haver also contends that the trial court violated his right to a speedy trial for a variety of reasons. O'Haver's claims are insufficient to "inform the court of the nature and occurrence of [the] alleged errors." RAP 10.10(c); State v. Alvarado, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). Moreover, these allegations involve matters outside of the record and therefore cannot be considered on appeal. See State v. McFarland, 127 Wn.2d 322, 337-38, 899 P.2d 1251 (1995).

Trickey, J.

WE CONCUR: