[No. 20359–2–I.   Division One.   December 19, 1988.]

THE STATE OF WASHINGTON, *Respondent*, v. PERNELL LORENZO ALEXANDER, *Appellant*.

*Neil M. Fox* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Denis O'Leary, Deputy,* for respondent.

SCHOLFIELD, C.J.—The defendant, Pernell Alexander, appeals his conviction for second degree assault. We affirm.

## FACTS

Although the facts are in dispute, there was substantial evidence that Cornelius Dunne loaned Alexander $50, which Alexander had not repaid despite many requests for payment. Alexander testified that he had never borrowed money from Dunne, but that Dunne frequently came to him asking for food and money. On the evening of July 31, 1986, Alexander was working as a cook in a restaurant where Dunn was playing in the band. There was testimony that in midevening, Dunne asked Alexander for money. Alexander refused the request and claims that Dunne yelled at him and told him not to go to his car without his pistol. Sanford, who was working in the restaurant as a dishwasher, testified that at that time he heard Dunne tell Alexander that "if he didn't get his money he knows what else."

Following this confrontation, Alexander allegedly told the bartender that if Dunne "fucks with me again I'm going to fry his ass. I've got the grease heating now." There was testimony that at approximately 11 o'clock, Alexander approached the bandstand and motioned for Dunne to come back to the kitchen. When the band finished playing, Dunne walked toward the kitchen. Alexander claimed that he thought Dunne was coming after him at the time. In an effort to defend himself, Alexander claims that he grabbed a pot, filled it with hot grease from the deep fryer, and threw it at Dunne. However, testimony of Dunne and Sanford indicates that Alexander took the pot of hot grease to the kitchen door, where he threw it on Dunne as Dunne was approaching the door. At that point, Dunne turned and ran outside, and Alexander called the police.

Alexander testified that prior to this episode, he was "[r]eal scared" that Dunne wanted to hurt him or kill him. He said his fear was based not only on statements by Dunne on the evening of July 31, 1986, but also on Dunne's reputation for violence. Specifically, Alexander testified he had previously seen Dunne with a shotgun and a knife and had heard Dunne bragging about being a whipping expert. Dunne denied making any threats to Alexander.

During direct examination, Dunne testified that his job at the restaurant required him to break up fights, but that he was not a bully and that he "[n]ever knocked nobody down." On cross examination of Dunne, defense counsel was allowed to inquire of Dunne as to whether or not he ever asked Joyce Widman, a friend of the defendant, if she had insurance "concerning this incident". Dunne testified that he had never asked her that question and had never threatened her. Dunne was also questioned as to whether or not he had knocked a person down at the bar, and he denied that also. Defense counsel then made an offer to prove through witnesses Sanford and Joyce Widman that Dunne knocked a person down in the restaurant. Defense counsel also desired to prove the alleged question by Dunne to Widman as to whether or not she had insurance, on the

theory that it constituted a threat.[1] The trial court excluded testimony from these two witnesses to specific acts by Dunne, but did permit testimony from three witnesses that Dunne's reputation for violence was not good.

### SPECIFIC ACTS OF VIOLENCE

Alexander assigns error to the trial court's ruling excluding evidence of specific acts of violence by Dunne. Alexander first argues that evidence of specific acts of violence by Dunne is admissible as character evidence showing who was the first aggressor.

Generally, evidence of a person's character is inadmissible to prove conformity therewith on a particular occasion. ER 404(a). However, an exception to this rule provides that "[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused" is admissible. ER 404(a)(2).[2]

Here, Alexander pleaded self–defense, and through his testimony raised the issue of whether he or Dunne was the first aggressor. *See* 5 K. Tegland, Wash. Prac. § 111, at 266 (2d ed. 1982). As evidence that Dunne was the first aggressor, Alexander offered the testimony of two witnesses concerning specific acts of violence by Dunne. This evidence is relevant to the first aggressor issue in that it tends to show Dunne had a violent disposition. *United States v. Burks,* 470 F.2d 432, 434 (D.C. Cir. 1972); ER 401. Therefore, evidence of Dunne's disposition is a pertinent trait of character admissible under ER 404(a)(2).

---

[1]The record is far from clear on these offers of proof. However, the State makes no objection on that basis. For purposes of this appeal, we will treat the offers of proof as adequate.

[2]ER 404 provides in pertinent part:

"(a) **Character Evidence Generally.** Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

". . .

"(2) *Character of Victim.* Evidence of a pertinent trait of character of the victim of the crime offered by an accused . . ."

However, specific instances of conduct are only admissible "[i]n cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense". ER 405(b).[3] For character to be an essential element, character itself must determine the rights and liabilities of the parties. *State v. Kelly*, 102 Wn.2d 188, 197, 685 P.2d 564 (1984).

Here, Dunne's character trait of violence is not an essential element of Alexander's claim of self–defense. The self–defense issue could be resolved without any evidence of, or reliance upon, a character trait of Dunne or the defendant. Therefore, while Dunne's reputation for violence is admissible under ER 405(a), specific acts of violence by Dunne are not admissible under ER 405(b).

Alexander also argues that the trial court should have admitted evidence of specific acts of violence by Dunne to rebut claims by Dunne that he was a man of peaceful character.

When a party opens up a subject on direct or cross examination, the rules permit cross examination or redirect examination within the scope of the examination in which the subject matter was first introduced. *State v. Gefeller*, 76 Wn.2d 449, 455, 458 P.2d 17 (1969). While a cross examiner is permitted to inquire into collateral matters testing the credibility of a witness, he does so at the risk of being concluded by the answers given by the witness. *State v. Oswalt*, 62 Wn.2d 118, 121, 381 P.2d 617 (1963). A witness cannot be impeached on matters collateral to the principal issues being tried. *Oswalt*, 62 Wn.2d at 120. Contradictory or impeaching testimony is collateral if it could

---

[3]ER 405 provides:

"(a) **Reputation.** In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation. On cross examination, inquiry is allowable into relevant specific instances of conduct.

"(b) **Specific Instances of Conduct.** In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct."

not be shown in evidence for any purpose independent of contradiction. *Oswalt,* 62 Wn.2d at 121.

The testimony of the two witnesses concerning specific acts of violence by Dunne was not admissible on the self–defense claim and could not have been admitted for any purpose independent of contradiction. Therefore, the testimony of the two witnesses was collateral and could not be used to impeach Dunne.

While we find the trial court ruled correctly on the evidence relating to specific acts by Dunne, we also note that exclusion of such evidence, if error, would have been harmless. A nonconstitutional error is harmless if, within reasonable probabilities, the error did not affect the result. *State v. Cunningham,* 93 Wn.2d 823, 831, 613 P.2d 1139 (1980).

Dunne was cross–examined about the specific acts that the trial court excluded. The court allowed the jury to hear the testimony concerning Dunne's reputation for violence from three witnesses, and Alexander was allowed to testify to specific reasons for fearing Dunne. There was also evidence of threats by Dunne and testimony that he carried a weapon on occasion and was employed as a bouncer and regularly broke up fights in the restaurant where he was employed. There was evidence he threatened the defendant. The witness Sanford testified that he had seen Dunne knock a man down. The question was objected to, but the witness answered it, and there was no motion to strike the answer, nor was there a ruling on the objection. The jury had the evidence before it. All of this evidence would not have been materially strengthened by evidence of the two specific acts which the trial court rejected.

The judgment is affirmed.

COLEMAN, A.C.J., and GROSSE, J., concur.