2014 NOV 24 AM 7: 50


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70743-4-I |
|  | ) |  |
| Respondent, | ) | DIVISION ONE |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| FRANCISCO RIOS-THOMAS, | ) | UNPUBLISHED |
|  | ) |  |
| Appellant. | ) | FILED: November 24, 2014 |
|  | ) |  |

Cox, J. – Francisco Rios-Thomas appeals his judgment and sentence for his conviction of second degree assault. The trial court properly exercised its discretion when it excluded evidence that the victim of his assault had been arrested for assault on prior occasions. The State presented sufficient evidence to support the conviction. And the claims asserted by Rios-Thomas in his statement of additional grounds do not warrant relief. We affirm.

On the evening of April 23, 2013, Jena Pay Pay, Rios-Thomas's girlfriend, met Rios-Thomas in a park near Pike Place Market. The two got into an argument. They gave conflicting accounts of what happened next.

Pay Pay testified that she was walking away from the park when Rios-Thomas ran up to her and punched her in the face. She fought back. Rios-Thomas punched her again and she fell to the ground. She got up and Rios-Thomas hit her again. Pay Pay grabbed Rios-Thomas and threw him on the

ground. She started running. She testified that Rios-Thomas then came from the opposite direction and hit her several more times. At some point, she lost consciousness.

Witnesses described seeing Pay Pay on the sidewalk when Rios-Thomas circled around her and kicked her in the back of the neck. These witnesses also testified that Pay Pay lost consciousness. When Pay Pay came to, she went to a nearby restaurant and told them to call the police.

Based on these events, the State charged Rios-Thomas with one count of assault in the second degree—domestic violence, and one count of intimidating a witness. The case proceeded to trial.

Prior to trial, Rios-Thomas moved in limine to admit evidence of Pay Pay's previous assaultive arrests. The court reserved ruling on the admissibility of this evidence. At trial, Rios-Thomas sought to question Pay Pay about these prior arrests during cross-examination. The court denied this request.

Rios-Thomas testified on his own behalf. He testified that Pay Pay was the aggressor, that she threw a bottle at him, and that she "kept hitting [him] so [he] punched her." He testified that he was afraid and he "just wanted to stop the threat." He argued that he acted in self-defense. The court granted his request for a self-defense instruction.

The jury found Rios-Thomas guilty of second degree assault, and it answered affirmatively that Rios-Thomas and Pay Pay were family or household members. The jury found Rios-Thomas not guilty of intimidating a witness.

Rios-Thomas appeals his conviction for second degree assault.

## EVIDENTIARY RULING

Rios-Thomas argues that the trial court "deprived [him] of his constitutional right to present a defense" when it excluded evidence that Pay Pay had previously been arrested for assault. He contends that this evidence supported his defense of self-defense by showing that he "reasonably believed he needed to strike Pay Pay to prevent further attack." We disagree.

Both the Sixth Amendment of the federal constitution and article I, section 22 of the state constitution guarantee an accused the right to present a defense.[1] But this right is not absolute. A defendant does not have a right to introduce evidence that is irrelevant or otherwise inadmissible.[2]

When a claim of self-defense is raised, the defendant may introduce two different kinds of evidence concerning the victim's character.[3]

First, the defendant may introduce evidence concerning the victim's reputation for violence.[4] "Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion."[5] But "[e]vidence of a pertinent trait of character of the victim

---

[1] State v. Jones, 168 Wn.2d 713, 720, 230 P.3d 576 (2010).

[2] State v. Rehak, 67 Wn. App. 157, 162, 834 P.2d 651 (1992).

[3] 13B SETH A. FINE & DOUGLAS J. ENDE, WASHINGTON PRACTICE: EVIDENCE § 3310 (2013-2014 ed.).

[4] State v. Alexander, 52 Wn. App. 897, 900, 765 P.2d 321 (1988).

[5] ER 404(a).

of the crime offered by an accused" is admissible.[6] When a defendant asserts self-defense, evidence of the victim's violent disposition is a pertinent character trait and is relevant to the issue of whether the victim was the first aggressor.[7]

Evidence offered for this purpose "must be in the form of reputation evidence, not evidence of specific acts."[8] "Specific acts may be used to prove character only where the pertinent character trait is an essential element of a claim or defense," and "[s]pecific act character evidence relating to the victim's alleged propensity for violence is not an essential element of self-defense."[9]

Second, evidence of the victim's violent actions or reputation may be admissible to show the defendant's state of mind at the time of the crime and to indicate whether he had reason to fear bodily harm.[10] Thus, a defendant "'may, in addition to the character evidence, show specific acts of the [victim] which are not too remote and of which [the defendant] had knowledge at the time of the [crime] with which he is charged.'"[11]

---

[6] ER 404(a)(2).

[7] Alexander, 52 Wn. App. at 900.

[8] State v. Hutchinson, 135 Wn.2d 863, 886, 959 P.2d 1061 (1998).

[9] Id. at 886-87.

[10] State v. Cloud, 7 Wn. App. 211, 218, 498 P.2d 907 (1972); State v. Adamo, 120 Wash. 268, 269, 207 P. 7 (1922).

[11] Cloud, 7 Wn. App. at 218 (quoting Adamo, 120 Wash. at 269).

For this purpose, evidence of specific acts is admissible.[12] "But such acts . . . may not be shown unless it appears they were brought to the knowledge of the defendant before he committed the crime charged."[13]

The admissibility of evidence is within the sound discretion of the trial court.[14] A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.[15]

Here, the trial court did not abuse its discretion when it denied Rios-Thomas's motion to admit evidence of specific acts that allegedly resulted in Pay Pay's arrests for fourth degree assault.

First, this evidence was not admissible to show Pay Pay's alleged propensity for violence because the evidence concerned specific acts. Evidence of a victim's alleged propensity for violence "must be in the form of reputation evidence, not evidence of specific acts."[16] Thus, while Rios-Thomas could introduce reputation evidence, he could not introduce evidence of prior arrests.

Second, this evidence was not relevant to Rios-Thomas's state of mind, because Rios-Thomas failed to show that he knew of these acts at the time that he assaulted Pay Pay.

---

[12] State v. Fondren, 41 Wn. App. 17, 25, 701 P.2d 810 (1985).

[13] Adamo, 120 Wash. at 271.

[14] State v. Atsbeha, 142 Wn.2d 904, 913, 16 P.3d 626 (2001).

[15] State v. Finch, 137 Wn.2d 792, 810, 975 P.2d 967 (1999).

[16] Hutchinson, 135 Wn.2d at 886.

Prior to trial, defense counsel asked the court to "reserve on admissibility [of this evidence] unless and until Mr. Rios-Thomas elects to testify." He argued that Rios-Thomas's testimony would resolve the issue about Rios-Thomas's knowledge of Pay Pay's prior acts of violence. The State agreed, and the court reserved ruling on admissibility of this evidence.

During trial, Rios-Thomas again moved to admit evidence of these specific incidents during cross examination of Pay Pay. The court denied this request but indicated that this evidence might later be admissible depending on the nature of Rios-Thomas's testimony:

> I'm not going to allow it at this point. I don't know if you want to consider renewing it but, at this point, I'm not going to allow you to cross-examine on arrests. The rule really does require a conviction, and even so far as I have heard the testimony, I don't really find a basis to allow it. I just don't. *You may have to think about whether you want to recall [Pay Pay] after [Rios-Thomas] testifies, should he choose to testify, to really put the issue of whether there's reasonable fear or apprehension that he might have.*[17]

However, despite the court leaving open the possibility for the admission of this evidence, and although Rios-Thomas testified, defense counsel did not question Rios-Thomas about these alleged prior assaultive arrests during his testimony. Defense counsel also failed to present any evidence that Rios-Thomas knew of these prior arrests or was present during these incidents. Consequently, without any evidence establishing Rios-Thomas's prior knowledge of these incidents, this evidence was not relevant to whether Rios-Thomas had a reasonable fear that Pay Pay was going to attack him.

---

[17] Report of Proceedings (July 2, 2013) at 106-07 (emphasis added).

In sum, because the evidence was inadmissible and irrelevant to the claim of self-defense, the court properly exercised its discretion when it excluded evidence of Pay Pay's alleged prior assaultive arrests.

Rios-Thomas argues that "evidence of the victim's specific earlier acts is admissible for the limited purpose of showing whether the defendant had a reasonable apprehension of danger." While this general proposition is true, the supreme court has expressly stated that such acts "*may not be shown unless it appears they were brought to the knowledge of the defendant before he committed the crime charged*."[18] As just discussed, Rios-Thomas failed to establish the requisite knowledge for this evidence to be admissible.

Rios-Thomas contends that the trial court's exclusion of the evidence violated his constitutional right to present a defense. He argues that he was "precluded from informing the jury of the relevant circumstances known to him at the time of the incident." But this is an evidentiary question, not one of constitutional magnitude. Rios-Thomas presented other evidence in support of his claim of self-defense, and the trial court granted his request for a self-defense instruction. He suffered no constitutional violation from this evidentiary ruling.

## SUFFICIENCY OF THE EVIDENCE

Rios-Thomas argues that the State failed to prove beyond a reasonable doubt each element of second degree assault. In particular, he argues that the State failed to prove that Pay Pay suffered substantial bodily harm. We disagree.

---

[18] Adamo, 120 Wash. at 271 (emphasis added).

"The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt."[19] "When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant."[20] A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom.

To sustain the conviction for assault in the second degree, the State had to prove beyond a reasonable doubt that Pay Pay suffered substantial bodily harm.[21] "Substantial bodily harm" is "bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part."[22] "Substantial" is not defined in the statute, but the supreme court has stated that the term "signifies a degree of harm that is considerable and necessarily requires a showing greater than an injury merely having some existence."[23]

In State v. McKague, the supreme court held that evidence of the victim's concussion, "which caused him such dizziness that he was unable to stand for a

---

[19] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[20] Id.

[21] RCW 9A.36.021(1)(a).

[22] RCW 9A.04.110(4)(b).

[23] State v. McKague, 172 Wn.2d 802, 806, 262 P.3d 1225 (2011).

time, was sufficient to allow the jury to find that he had suffered a temporary but substantial impairment of a body part or an organ's function."[24]

Here, the State presented sufficient evidence to prove that Pay Pay suffered substantial bodily harm. Like in McKague, Pay Pay's concussion and loss of consciousness allowed the jury to find that Pay Pay suffered a bodily injury which caused a temporary but substantial loss or impairment of the function of any bodily part or organ. Specifically, Pay Pay temporarily lost the function of her brain.

Several witnesses, including Pay Pay herself, testified that Pay Pay lost consciousness. One witness testified that Pay Pay "tumbled off of the sidewalk" and "laid there motionless for a minute" before she got up. Another witness testified that Pay Pay's head "bounced off of the sidewalk," that her "eyes were funny," and that she "came back to consciousness" when Rios-Thomas kicked her. The emergency room physician who treated Pay Pay following the assault testified that she suffered a concussion and a loss of consciousness. The physician further testified that a concussion is "an injury to the brain that results in a temporary dysfunction of the brain."

The physician also testified about potential long-term effects of head injuries. In particular, she explained that a patient who still has symptoms from a head injury can have something called "a second hit phenomenon where, if [the patient] get[s] a second head injury, it could result in some longer lasting or longer term sequela."

---

[24] 172 Wn.2d 802, 806, 262 P.3d 1225 (2011).

In sum, viewing this evidence in the light most favorable to the State, the State's evidence was sufficient on the "substantial bodily harm" element of second degree assault.

Rios-Thomas compares the injuries in this case to those in several other cases and argues that "[b]y comparison, Pay Pay's injury was minor."[25] He points out that Pay Pay suffered no broken bones, and the C.T. scan showed no bleeding in the brain and no skull fracture. Thus, he argues that "[t]he State failed to establish temporary but substantial disfigurement, or temporary but substantial loss or impairment of function, or any broken bones."

But while fractures or bleeding in the brain might be sufficient to show substantial bodily injury, these symptoms are not necessary to meet the statutory definition of substantial bodily harm. The cases cited by Rios-Thomas do not hold otherwise, nor do they hold that the type of injury that Pay Pay experienced is insufficient to meet the statutory definition. In fact, Pay Pay's concussion injury was similar to the concussion injury in McKague, where the supreme court held the evidence was sufficient. Accordingly, Rios-Thomas's reliance on these cases is not persuasive.

## STATEMENT OF ADDITIONAL GROUNDS

Rios-Thomas advances two arguments in his statement of additional grounds. Neither has merit.

---

[25] Brief of Appellant at 13-14 (citing McKague, 172 Wn.2d at 804-07; State v. Hovig, 149 Wn. App. 1, 5, 13, 202 P.3d 318 (2009); State v. Ashcraft, 71 Wn. App. 444, 448-49, 859 P.2d 60 (1993)).

First, Rios-Thomas argues that the trial judge "rushed the jury to come to a verdict on [his] charges stating that if they did not come to a conclusion before 4pm then they would have to come all the way back on Monday July 8th due to the fourth of July weekend." But a review of the record does not support this assertion. Thus, we reject this claim.

Second, Rios-Thomas states that the prosecutor "was reprimanded" for leading the witness and "attempting to force [the witness] to have a sudden remembrance of statements." But Rios-Thomas does not make any argument about this alleged misconduct that this court can review. Accordingly, we do not consider it any further.

We affirm the judgment and sentence.

Cox, J.

WE CONCUR:

Trickey, J

Schindler, J

11