IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>PETER LEWIS-FERNANDO GARRIDO,<br><br>Appellant. | No. 85119-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |
|---|---|

CHUNG, J. — Peter Garrido appeals his conviction for assault in the first degree with a firearm enhancement. Garrido claimed self-defense. On appeal, Garrido alleges the trial court violated his right to present a defense by excluding evidence relating to the victim's prior convictions and that it erred in declining proposed defense instructions regarding firearm rights and missing evidence. Garrido also asks us to remand for the trial court to strike the Victim Penalty Assessment (VPA) imposed at sentencing. And he presents a statement of additional grounds for review (SAG). We affirm Garrido's conviction, but remand to the trial court to strike the VPA from his judgment and sentence.

FACTS

The State charged Garrido with assault in the first degree with a firearm enhancement for shooting Abdifatah Hassan during a road rage incident. Garrido's first trial resulted in a hung jury. At retrial, witnesses testified to the following events.

On June 13, 2020, around midday, Garrido was driving his black Mazda southbound on Interstate 5 (I-5) near Federal Way. Hassan, accompanied by his wife and their three-year-old son, was driving his black BMW.

According to Garrido, the altercation began when he and Hassan tried to merge into the same lane at the same time, causing Hassan to "become enraged." Hassan and Hassan's wife were screaming and "giving [him] the finger." Garrido sped up in an attempt to get away, but Hassan chased him, threw things at his car, and "purposely tapped" the rear end of Garrido's car with his car. Hassan gestured for him to pull over, and Garrido did so. Garrido testified that Hassan ran to Garrido's car and tried to open the driver's side door, but it was locked. Hassan gestured to Garrido to get out of the car. Garrido said he lowered his driver's side window to talk, but before he could speak, Hassan struck him on the side of the head with his fist. Garrido said he grabbed his gun from the glove box and "showed it to [Hassan] in the hopes that he would back away," but Hassan "came at [him] again" so Garrido shot once, aiming for Hassan's arm. Garrido asserted that there was no other way to get Hassan to stop the attack. Garrido did not see blood, so he assumed the bullet missed and proceeded to drive to his girlfriend's house in Auburn.

Hassan's version of events differed significantly from Garrido's. According to Hassan, the altercation began when Garrido "basically swerved onto us to overtake us." This caused Hassan to spill his tea, which upset him. Garrido "flipped us off and then started brake-checking us" and threw objects at Hassan's car. Hassan admitted that he responded by throwing a water bottle at Garrido's

2

car, but denied that his car contacted Garrido's car at any time during the incident.

Hassan pulled over to the side of the freeway in an attempt to "de-escalate the situation and be done with it," but Garrido pulled over and parked behind him. Hassan thought Garrido was getting out of his car, so he decided to walk towards Garrido's car to keep Garrido away from his family. As Hassan approached, Garrido laughed and held up his phone to take a photograph. Hassan approached the driver's side window and asked, "What is the matter with you?" Garrido then grabbed his gun and shot Hassan. Hassan testified he was standing about six feet away from Garrido when he was shot, and he denied hitting Garrido or reaching into Garrido's car. It is undisputed that Hassan was unarmed and did not have anything in his hands during the incident. Garrido "flipp[ed] [Hassan] off" and drove away from the scene.

Hassan's wife Jowharaay Ahmed testified that the incident began when Hassan was forced to swerve to avoid being struck by Garrido's car. She said Hassan pulled over and went to the Mazda "so that way he doesn't come to us." Ahmed testified that at the time of the shooting, Hassan was located "on the side front fender of the Mazda, the driver's side" and agreed that it appeared Hassan was "standing right outside the driver's side window." She could not recall whether she was still inside the car when the shot was fired. Ahmed said neither she nor her husband was armed with anything or had a firearm in their car. She said Garrido "flipp[ed] [her] off" as he drove away.

3

Several other eyewitnesses who observed the altercation also testified at trial. Kelsey Bingham said she saw two cars driving aggressively and later saw the same cars parked on the shoulder, with the driver of the front car walking towards the driver of the back car and putting his hands on the driver's door. Melanie Johns testified that she saw both cars driving erratically. Later, she saw the cars parked on the shoulder with two men standing outside when one suddenly "flew back" as if injured. And Michael Banker testified that he saw a water bottle thrown from a BMW at a Mazda, then the Mazda sped away with the BMW in pursuit. The cars were both passing other cars, and then, near the 320th exit, the BMW pulled over, followed by the Mazda. The driver of the BMW got out of his car, approached the Mazda, which was behind the BMW, and started "hitting the vehicle front left quarter panel." The driver of the Mazda, still sitting in the driver's seat, then "raise[d] something black" and Banker heard a "loud sound." Banker said he "saw distance" between the men and that he did not see the driver of the BMW punch the driver of the Mazda.

The bullet entered on the left side of Hassan's abdomen below the rib cage and exited on the right side. After being shot, Hassan first "ran to [a] ditch for safety," and after Garrido drove off, Hassan got in his car. His wife was already on the phone with 911. Responding officers and Hassan's wife removed Hassan's upper garments before medics arrived at the scene and transported him to Harborview Medical Center.

Police ran the license plate of the Mazda and determined that the owner was Garrido, a Seattle Police Department records technician who held a valid

concealed weapons permit. Garrido's supervisor indicated that he called out sick roughly an hour and a half after the shooting. Garrido was arrested at home two days after the incident. Police recovered the handgun used in the shooting from Garrido's bedroom and a single fired shell from the back seat of his car.

Garrido admitted that after the incident he removed the front and rear license plates from his car and stored them in the trunk, but claimed that he did so out of fear that Hassan might have his license plate number and could find him to retaliate. Garrido also admitted that he did not call 911 or report the incident, but explained that he didn't think the bullet hit Hassan and he wanted to seek legal help before speaking with police "because of myself being Black and Latino." The defense also presented the testimony of Dr. April Gerlock, a psychiatric nurse practitioner who opined Garrido suffered from post-traumatic stress disorder (PTSD) based on past traumatic events and that his PTSD impacted his behavior after the confrontation with Hassan.

The jury convicted Garrido as charged. Garrido appealed.

## DISCUSSION

Garrido raises several issues on appeal. He argues the trial court violated his right to present a defense and that it erred in failing to give certain proposed instructions. He also challenges the VPA imposed at sentencing. And he assigns additional errors in a SAG.

## I.    Right to Present a Defense

Garrido argues the trial court deprived him of his right to present a defense by excluding evidence regarding Hassan's prior acts and convictions to

impeach his credibility. We disagree that the exclusion of this evidence was constitutional error.

The United States and Washington State Constitutions do not mention a right to present a defense; a claim of a violation of this right is more appropriately classified as a violation of a defendant's right to confront the witnesses against him or her. See State v. Ritchie, 24 Wn. App. 2d 618, 628 n.3, 520 P.3d 1105 (2022) (citing U.S. CONST. amend. VI; CONST. art. I, § 22). The right to present testimony and evidence in one's own defense is not without limitation. State v. Orn, 197 Wn.2d 343, 352, 482 P.3d 913 (2021). "[T]he Constitution permits judges to exclude evidence that is repetitive ... only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues." Orn, 197 Wn.2d at 352 (quoting Holmes v. S. Carolina, 547 U.S. 319, 326-27, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006)) (alterations in original). Significantly, there is a "distinction between evidence that merely bolsters credibility and evidence that is necessary to present a defense. State v. Jennings, 199 Wn.2d 53, 66-67, 502 P.3d 1255 (2022).

To determine whether the trial court denied Garrido's right to present a defense, we apply a two-part test. Id. at 58. We first review the challenged evidentiary ruling for abuse of discretion. Id. at 58-59. A trial court abuses its discretion if no reasonable person would take the view it adopted. State v. Hall, 112 Wn. App. 164, 169-70, 48 P.3d 350 (2002). If we find no abuse of discretion, we then consider de novo whether the exclusion of evidence violated the

6

defendant's constitutional right to present a defense. Jennings, 199 Wn.2d at 58-59.

To support his theory of self-defense, Garrido sought to introduce evidence to impeach Hassan's credibility. First, he offered evidence regarding Hassan's 2008 conviction for breach of the peace following a car accident in which witnesses stated Hassan assaulted the other driver and said, "I'm gonna fuck you up, bitch. I should fucking kill you, bitch." Second, Garrido offered evidence that in 2009, Hassan pleaded guilty to vehicle prowl in the second degree for stealing financial vouchers from his employer, a car dealer. In 2013, the conviction was vacated after Hassan falsely informed the sentencing court that he had attended the University of Washington (UW) on a "full ride scholarship" and graduated at the top of his class in 2012. Additionally, Garrido sought to introduce evidence that Hassan's October 2021 defense interview contained false or misleading statements regarding the events underlying his prior convictions, including his claims regarding the UW. Garrido argued that this evidence supported his argument that Hassan's attack put him in reasonable fear that he would be harmed if he did not defend himself.

Garrido does not argue an abuse of discretion in the trial court's application of the rules of evidence, and we find none. The trial court ruled that Hassan's prior convictions were inadmissible under ER 609, ER 404(a), and ER 405.[1] The court did, however, permit cross-examination under ER 608(b) as to

---

[1] The court also ruled that evidence of Hassan's prior convictions was inadmissible under ER 404(b), which provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Because ER

Hassan's false representation to the court in his vehicle prowl case that he attended and graduated from the UW.

ER 609(a) allows admission of prior convictions for the limited purpose of impeaching a witness if the crime was punishable by more than one year of imprisonment and the court determines that the probative value outweighs the prejudicial effect, or if the crime involved dishonesty or false statement. Such evidence is presumptively inadmissible for impeachment purposes if the convictions are more than 10 years old unless the proponent overcomes the presumption with specific facts and circumstances establishing that the probative value of the conviction substantially outweighs its prejudicial effect. ER 609(b); State v. Jones, 117 Wn. App. 221, 232, 70 P.3d 171 (2003). Here, the court noted that breach of peace was not a crime of dishonesty. Further, it ruled that "[e]ven assuming that vehicle prowl in the second degree is a crime of dishonesty (and the Court is not aware of any authority holding that it is), neither conviction was punishable by imprisonment of more than one year, both convictions are more than ten years old, and their probative value does not substantially outweigh their prejudicial effect." The court did not abuse its discretion in excluding this evidence under ER 609.

While ER 404(a) generally prohibits admission of character evidence for the purpose of proving action in conformity therewith on a particular occasion, an exception to this rule is that "[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused" is admissible. ER 404(a)(2). Thus, a

---

404(a) specifically addresses when character evidence about a victim may be admissible, this analysis was unnecessary.

defendant may introduce evidence of the victim's violent disposition to show the victim acted in a violent manner at the time of the crime. State v. Hutchinson, 135 Wn.2d 863, 886, 959 P.2d 1061 (1998), abrogated on other grounds by State v. Jackson, 195 Wn.2d 841, 467 P.3d 97 (2020). Specifically, as here, when the defendant claims self-defense and raises the issue of whether the victim was the first aggressor, evidence of the victim's violent disposition is relevant. See State v. Alexander, 52 Wn. App. 897, 900, 765 P.2d 321 (1988). However, evidence of a character trait such as a victim's violent disposition "must be in the form of reputation evidence, not evidence of specific acts." Hutchinson, 135 Wn.2d at 886 (citing ER 404(a)(2); ER 405(a)).

On the other hand, a party *may* use specific acts to prove character if the pertinent character trait "is an essential element of a charge, claim, or defense," ER 405(b). But specific act character evidence of a victim's propensity for violence is not an essential element of self-defense. Hutchinson, 135 Wn.2d at 886-87.

Here, as the trial court noted, Garrido did not seek to introduce reputation evidence about Hassan and could "not introduce specific instances of conduct under a first aggressor theory." Nor were Hassan's prior convictions admissible to show Garrido's state of mind when the incident occurred, i.e., a reasonable fear of bodily harm, as Garrido did not know about them at the time of the shooting.[2] The court did not err in excluding evidence of Hassan's prior convictions to impeach Hassan's credibility under ER 404(a) and ER 405.

---

[2] Another permissible purpose for admitting evidence of a victim's prior violent acts is to show the defendant's state of mind at the time of the crime and to indicate whether the defendant

Having concluded that the trial court did not abuse its discretion by excluding the prior acts evidence through which Garrido sought to impeach Hassan, next, we review de novo whether the exclusion of this proffered evidence nevertheless violated Garrido's right to present a defense. "The second step in our analysis requires us to examine whether the trial court's ruling, despite being a proper application of the evidentiary rules, nonetheless runs afoul of either the state or federal constitutions." Ritchie, 24 Wn. App. 2d at 628. In evaluating a defendant's right to present a defense, our "pertinent concern" is "whether both parties receive a fair trial." Id. at 634 (citing State v. Darden, 145 Wn.2d 612, 622, 41 P.3d 1189 (2002)). This concern "is heightened when a new or antiquated rule appears to threaten the defendant's right to a fair trial," but where the applied rule is a "well-established, commonly utilized rule that has been applied time and again without any demonstrated detriment to the fairness of proceedings," the concern is not paramount. Ritchie, 24 Wn. App. 2d at 634-35. As we explained in Ritchie,

> "At its core, the constitutional right to present a defense ensures the defendant has an opportunity to defend against the State's accusations." Jennings, 199 Wn.2d at 66, 502 P.3d 1255. But "the Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " Kentucky v. Stincer, 482 U.S. 730, 739, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987) (quoting Delaware v. Fensterer, 474 U.S. 15, 20, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985)). Accordingly, when the

---

had reason to fear bodily harm. State v. Cloud, 7 Wn. App. at 218. Such evidence is relevant only if the defendant knew of the acts before committing the crime. State v. Duarte Vela, 200 Wn. App. 306, 326, 402 P.3d 281 (2017) ("It is well established that a victim's specific acts of violence, *if known by the defendant*, are admissible when the defendant asserts self-defense."); Cloud, 7 Wn. App. at 218. Here, not only did Garrido not know of the prior convictions at the time he shot Hassan, but also, he sought to admit Hassan's prior convictions for the purpose of impeaching Hassan's credibility, not for the purpose of showing his own state of mind.

> defendant has an opportunity to present his theory of the case, the exclusion of some aspects of the defendant's proffered evidence will not amount to a violation of the defendant's constitutional rights. <u>Jennings</u>, 199 Wn.2d at 66, 502 P.3d 1255. To be sure, "[t]he ability of the defendant to achieve through other means the effect that the excluded examination allegedly would have produced is a factor indicating that his right to confrontation was not violated." <u>United States v. Drapeau</u>, 414 F.3d 869, 875 (8th Cir. 2005).

24 Wn. App. 2d at 635.

Garrido asserts that the applicable rules of evidence should give way to his constitutional right to present a defense under the unique facts of this case. Specifically, he points to conflicting eyewitness testimony regarding the distance between Garrido and Hassan at the time of the shooting and the State's failure to preserve Hassan's sweatshirt, which could have helped the jury to determine the distance. Garrido contends that because credibility was the primary contested issue at trial, evidence impeaching Hassan's credibility—including Hassan's behavior toward another driver under similar circumstances and Hassan's willingness to lie in legal proceedings—was relevant and necessary for him to present his defense.

We disagree. The trial court excluded evidence of Hassan's prior convictions pursuant to "well-established, commonly utilized rule[s] that ha[ve] been applied time and again without any demonstrated detriment to the fairness of proceedings." <u>Ritchie</u>, 24 Wn. App. 2d at 634-35. Moreover, Garrido was able to point to evidence supporting his argument that Hassan's version of events was not credible. Although Hassan testified that he never touched Garrido's car and was standing six feet away when he was shot, two of the three eyewitnesses who observed the altercation testified that Hassan made physical contact with

Garrido's car near the driver's side window. And on cross-examination, Hassan's wife agreed that it appeared Hassan was "standing right outside the driver's side window." Additionally, the trial court allowed Garrido to impeach Hassan's credibility with evidence that Hassan falsely claimed to have attended the UW and other related misrepresentations, and Garrido elicited this information on cross-examination. We therefore conclude that the trial court's evidentiary rulings regarding Hassan's prior convictions and misrepresentations during his 2021 defense interview were proper applications of well-established rules and did not violate Garrido's right to present a defense.

II.     Proposed Jury Instructions

Garrido contends the trial court erred in not accepting his proposed set of jury instructions regarding his right to carry a firearm and his proposed "missing evidence" instruction. We disagree.

"Jury instructions are generally sufficient where they are supported by substantial evidence, properly state the law, and allow the parties an opportunity to satisfactorily argue their theories of the case." State v. Espinosa, 8 Wn. App. 2d 353, 360-61, 438 P.3d 583 (2019) (citing State v. Clausing, 147 Wn.2d 620, 626, 56 P.3d 550 (2002)). "A defendant in a criminal case is entitled to have the jury fully instructed on the defense theory of the case." State v. Staley, 123 Wn.2d 794, 803, 872 P.2d 502 (1994)).

This court evaluates each jury instruction in the context of the instructions as a whole. State v. Henderson, 192 Wn.2d 508, 512, 430 P.3d 637 (2018). "A trial court's refusal to give instructions to a jury, if based on a factual dispute, is

reviewable only for abuse of discretion." State v. Walker, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998). The trial court's refusal to give an instruction based upon a ruling of law is reviewed de novo. State v. Sullivan, 196 Wn. App. 277, 291, 383 P.3d 574 (2016).

A.    Self-Defense Instructions

Garrido proposed standard self-defense instructions requiring the prosecutor to disprove self-defense, which the trial court allowed. However, Garrido claims the trial court erred in refusing to give the following proposed instructions regarding his firearm rights:

> The United States Constitution protects an individual's right to carry a handgun for self-defense outside the home.
>
> A holder of a Washington State concealed pistol license is permitted to carry a pistol concealed on their person for the purposes of protection or while engaged in business, sport, or while traveling.
>
> A person licensed to carry a concealed pistol may lawfully carry a loaded pistol in a vehicle so long as the pistol is on the licensee's person or the licensee is within the vehicle at all times that the pistol is there.
>
> A person acting for the purpose of protecting himself against the use of presently threatened unlawful force by another may carry, exhibit, display, or draw a firearm.

Garrido argues the proposed instructions were needed to make clear that his possession of a concealed loaded firearm in his car and his decision to display the firearm as an act of self-defense were lawful and could not be used as a basis to defeat his self-defense claim. We disagree. The issue at trial was Garrido's unlawful *use* of his firearm, not his possession. Garrido was permitted to, and did, present evidence that he lawfully purchased his firearm and that he

13

had a concealed pistol license that entitled him to lawfully carry it. And Garrido presents no authority for the proposition that his proposed instructions were required. The pattern self-defense instructions given by the trial court properly stated the law and allowed Garrido to argue his theory of the case.

      B.    <u>Missing Evidence Instruction</u>

Garrido next argues that the trial court erred by refusing to give his proposed "missing evidence" instruction regarding the sweatshirt Hassan was wearing when he was shot. We disagree.

"The missing evidence instruction is a permissive inference instruction that informs the jury that 'where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, ... he fails to do so,—the jury may draw an inference that it would be unfavorable to him.' " <u>State v. Derri</u>, 17 Wn. App. 2d 376, 404, 486 P.3d 901 (2021) (alteration in original) (internal quotation marks omitted) (quoting <u>State v. Blair</u>, 117 Wn.2d 479, 485-86, 816 P.2d 718 (1991)), <u>aff'd but criticized</u>, 199 Wn.2d 658, 511 P.3d 1267 (2022). The missing evidence instruction applies where evidence " 'is within the control of the party whose interest it would naturally be to produce it.' " <u>Derri</u>, 17 Wn. App. at 404 (internal quotation marks omitted) (quoting <u>Blair</u>, 117 Wn.2d at 485-86). The instruction is not warranted when the evidence is unimportant, merely cumulative, or when its absence is satisfactorily explained. <u>Derri</u>, 17 Wn. App. 2d at 404.

Police collected Hassan's clothes from the hospital as evidence. None of Hassan's upper garments, including a black sweatshirt he was wearing during

the incident, were among the items collected. Two defense experts testified at trial that clothing can be examined for gunshot residue to determine the distance from the target to the muzzle of the gun when it was fired.

The issue of the missing sweatshirt was initially raised by the defense after the first trial in a CrR 8.3(b) motion to dismiss based on prosecutorial misconduct for the State's failure to collect and preserve the sweatshirt. The court denied the motion, concluding that the exculpatory value of the sweatshirt "was not apparent at the scene," there was no evidence of bad faith by the State, and the sweatshirt would have been cumulative of evidence regarding how far Hassan was from Garrido when he was shot. At the conclusion of evidence in the second trial, the defense proposed a missing evidence instruction regarding the sweatshirt, which the court denied on the basis that the sweatshirt "was not particularly within the control of the State" and it was "undisputed" that the sweatshirt went missing because it was removed from Hassan's body by responders who provided medical assistance.

Garrido asserts that the court erred in refusing to give a missing evidence instruction because Hassan's upper garments were exclusively within the State's control when removed from Hassan's body, yet responding officers "failed to collect and preserve them for the investigation." He further contends that the missing sweatshirt was important material evidence because it could have been tested for gunshot residue to determine whether or not Hassan was within arm's reach of the gun when the shot was fired.

"To protect a defendant's due process rights, the State has a duty to preserve and disclose exculpatory evidence." State v. Koeller, 15 Wn. App. 2d 245, 252, 477 P.3d 61 (2020). But the State does not have " 'an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution.' " State v. Wittenbarger, 124 Wn.2d 467, 475, 880 P.2d 517 (1994) (quoting Arizona v. Youngblood, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988)). Rather, "[t]he State's duty extends only to material exculpatory evidence and to 'potentially useful' evidence destroyed in bad faith by the State." Koeller, 15 Wn. App. 2d at 252 (quoting State v. Armstrong, 188 Wn.2d 333, 345, 394 P.3d 373 (2017)). "In order to be considered 'material exculpatory evidence', the evidence must both possess an exculpatory value that was apparent before it was destroyed and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Wittenbarger, 124 Wn.2d at 475 (quoting California v. Trombetta, 467 U.S. 479, 489, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984)). The presence or absence of bad faith turns " 'on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed.' " State v. Groth, 163 Wn. App. 548, 558, 261 P.3d 183 (2011) (quoting Youngblood, 488 U.S. at 56).

Garrido has not shown that the police had a duty to collect the sweatshirt after it was removed from Hassan's body. As the trial court noted in denying Garrido's CrR 8.3(b) motion to dismiss, the exculpatory value of the sweatshirt would not have been reasonably apparent to officers responding to a freeway

shooting. Garrido acknowledges that the responding officers' failure to collect the sweatshirt was "likely a mere oversight." Garrido was able to present comparable evidence to what he claims the gunshot residue might have shown, i.e., the distance between the target (Hassan) and the muzzle of Garrido's gun, as multiple witnesses testified regarding the distance between Hassan and Garrido when Hassan was shot. And Garrido was able to argue that the absence of the sweatshirt showed a lack of evidence under the reasonable doubt standard. Garrido has not established that he was entitled to a missing evidence jury instruction.

III.     Victim Penalty Assessment

Garrido was ordered to pay the VPA pursuant to RCW 7.68.035 at the time of his sentencing. Under RCW 7.68.035(4), which became effective in July 2023, trial courts are required to waive the VPA if a defendant is indigent as defined in RCW 10.01.160(3). This court has applied this waiver to cases pending direct appeal when the law went into effect. See State v. Ellis, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023) (citing State v. Ramirez, 191 Wn.2d 732, 748-49, 426 P.3d 714 (2018)).

The court found Garrido indigent when it sentenced him, and his direct appeal was pending when the law went into effect. The State does not object to remand to strike the VPA from Garrido's judgment and sentence. We accept the State's concession and remand for the superior court to strike the VPA.

IV.    Statement of Additional Grounds

In his SAG, Garrido alleges insufficiency of the evidence, violation of his right to notice of the elements charged, error based on missing evidence, violation of his speedy trial rights, and prosecutorial misconduct. None of these additional grounds warrants appellate relief.[3]

A.    Sufficiency of the Evidence

Garrido argues the evidence was insufficient to convict him because the State failed to disprove his claim of self-defense. A claim of insufficiency "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All reasonable inferences must be interpreted in favor of the State and most strongly against the defendant. Id. Additionally, an appellate court must defer to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. State v. Fiser, 99 Wn. App. 714, 719, 995 P.2d 107 (2000).

Assault in the first degree required the State to prove that Garrido, with intent to inflict great bodily harm, assaulted Hassan with a firearm. RCW 9A.36.011(1)(a). Because a person acting in self-defense is acting lawfully, proof

---

[3] After the parties' briefing was complete, Garrido filed a motion to supplement the appellate record under RAP 9.10 to include "all clerk's papers," "all exhibits," "all verbatim [report] of proceedings," and "all discovery regarding the probable cause and information." He contends that "[c]ounsel's designation omits key parts of the record needed to adjudicate this matter as briefed in the Statement of Additional Grounds." However, Garrido has not indicated how these additional records would be helpful for review. Even though appellants are not required to cite to the record or authority in their SAG, they must still "inform the court of the nature and occurrence of [the] alleged errors," and this court is not required to search the record to find support for the defendant's claims. RAP 10.10(c); State v. Meneses, 149 Wn. App. 707, 716, 205 P.3d 916 (2009). And as Garrido's counsel noted in a letter attached to Garrido's motion, discovery materials that were not introduced at trial cannot be used to support any claims on direct appeal. The motion is denied.

of self-defense negates the intent element of assault. State v. Brown, 94 Wn. App. 327, 343 n.4, 972 P.2d 112 (1999). When raised by a defendant, the State must disprove self-defense as part of its burden to prove beyond a reasonable doubt that the defendant committed the offense charged. State v. Meza, 26 Wn. App. 2d 604, 620, 529 P.3d 398 (2023). "Evidence of self-defense is evaluated 'from the standpoint of the reasonably prudent person, knowing all the defendant knows and seeing all the defendant sees.' " State v. Walden, 131 Wn.2d 469, 474, 932 P.2d 1237 (1997) (quoting State v. Janes, 121 Wn.2d 220, 238, 850 P.2d 495 (1993)). Reasonable force in self-defense is justified where there is an appearance of imminent danger. State v. Bradley, 141 Wn.2d 731, 737, 10 P.3d 358 (2000). The degree of force used is limited to what a reasonably prudent person would find necessary under the conditions as they appeared to the defendant. Walden, 131 Wn.2d at 474.

To refute the claim of self-defense, the State provided evidence that the force used was more than necessary in light of the apparent danger. It is undisputed that Hassan was unarmed when he approached Garrido's car and that Garrido rolled down his window and shot Hassan. And in challenging Garrido's credibility, the State pointed out that Garrido fled the scene without calling 911, removed his license plates after the shooting, and that no evidence corroborated his claim that Hassan punched him in the head. Viewing the evidence in the light most favorable to the State, the jury had sufficient evidence to refute Garrido's self-defense claim and to find that by shooting Hassan, Garrido committed assault in the first degree.

B. Right to Notice

Garrido argues he was deprived of his constitutional right to notice of the charges against him because the information failed to allege that the State had "overcome the negation of intent." Garrido is incorrect. An information is constitutionally defective if it fails to list the essential elements of a crime. State v. Zillyette, 178 Wn.2d 153, 158, 307 P.3d 712 (2013). But lack of self-defense is not an essential statutory element that must be alleged in the charging document. See State v. McCullum, 98 Wn.2d 484, 493, 656 P.2d 1064 (1983) (interpreting statutory language changes in homicide and self-defense statutes as evidence of legislature's intent "to relieve the prosecution of the necessity of pleading the absence of self-defense"). Rather, "the absence of self-defense becomes another element of the offense which the State must prove beyond a reasonable doubt." Id. at 493-94. Garrido received the notice to which he was entitled.

C. Missing Evidence

Garrido argues that the trial court erred in denying his CrR 8.3(b) motion to dismiss based on the missing sweatshirt. He contends the sweatshirt constituted material exculpatory evidence and that the State's failure to preserve it violated his due process rights.

We review a trial court's CrR 8.3(b) ruling for abuse of discretion. State v. Michielli, 132 Wn.2d 229, 240, 937 P.2d 587 (1997). Relief under CrR 8.3(b) requires a showing of arbitrary action or governmental misconduct and that such action prejudiced the defendant's right to a fair trial. State v. Brooks, 149 Wn.

20

App. 373, 384, 203 P.3d 397 (2009). As discussed above, the sweatshirt was not material exculpatory evidence that the State had a duty to collect. The court did not abuse its discretion in refusing to dismiss Garrido's case on this basis.

### D. Speedy Trial

Garrido argues that the trial court violated his CrR 3.3 speedy trial rights. He asserts that the speedy trial period expired on June 30, 2021, and that "no valid resetting of the commencement date is listed on the index of records to this case."

Our criminal rules require that the trial of an accused who remains in jail after arrest must commence within 60 days of arraignment. CrR 3.3(b)(1)(i). The rules also exclude periods of time for various reasons. CrR 3.3(e). To preserve a claim for a speedy trial rule violation, the defendant must timely object to the setting of a trial that is outside of the speedy trial period. CrR 3.3(d)(4). The record before us does not show a speedy trial objection,[4] so Garrido has waived any claimed violation of the rule.

### E. Prosecutorial Misconduct

Garrido argues that prosecutorial misconduct deprived him of a fair trial. We review statements in a prosecutor's closing arguments in the context of the issues in the case, the total argument, the evidence addressed in the argument, and the jury instructions. State v. Boehning, 127 Wn. App. 511, 519, 111 P.3d

---

[4] To the extent that Garrido's claim may rest on matters outside the record, the issue may not be considered on direct appeal, but rather may be raised in a properly supported personal restraint petition. State v. McFarland, 127 Wn.2d 322, 338 n.5, 899 P.2d 1251 (1995). As noted above, though Garrido moved to supplement the record, he did not identify specific portions that would support this (or any other) claim, and this court is not required to search the record for such support. RAP 10.10(c).

899 (2005). The defendant bears the burden of proving that the prosecutor's alleged misconduct was both improper and prejudicial. State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). The failure to object to an improper remark constitutes a waiver of error unless it is so flagrant and ill-intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury. State v. Thorgerson, 172 Wn.2d 438, 443, 258 P.3d 43 (2011).

"Mere appeals to jury passion and prejudice, . . . are inappropriate." State v. Belgarde, 110 Wn.2d 504, 507, 755 P.2d 174 (1988). Such arguments create a danger that the jury may convict for reasons other than the evidence. State v. Ramos, 164 Wn. App. 327, 338, 263 P.3d 1268 (2011). Garrido claims that the prosecutor inflamed the passions and prejudices of the jury during the cross-examination of Dr. Gerlock by asking whether she was aware that Hassan is Black. But this question did not occur during the second trial that resulted in Garrido's conviction. During Garrido's first trial, the court sustained a defense objection on the ground that the question was argumentative and cumulative but denied the defense's motion to dismiss on this basis. The prosecutor did not repeat the question during cross-examination of Dr. Gerlock in the second trial.

Garrido next argues that the prosecutor "committed character assassination" during closing by arguing that his failure to call 911 after the shooting showed that he was dishonest and knew what he did was wrong. Garrido further asserts that these arguments were in "direct conflict of the right to silence under the Fifth Amendment." We disagree. A prosecutor has wide latitude

to draw reasonable inferences from the evidence during closing argument. Thorgerson, 172 Wn.2d at 448. Here, it is undisputed that Garrido did not call 911, so his failure to call does not implicate his Fifth Amendment right to silence. See State v. Escalante, 195 Wn.2d 526, 529, 461 P.3d 1183 (2020) (Fifth Amendment protects the right to be free from compelled self-incrimination). Instead, the prosecutor properly argued that Garrido's failure to call 911 demonstrated that Garrido's version of events was not credible and that he acted with consciousness of guilt.

Garrido also argues that the prosecutor "improperly acted as a witness and juror" during closing by arguing that he was being untruthful. "A prosecutor may comment on a witness's veracity as long as a personal opinion is not expressed and as long as the comments are not intended to incite the passion of the jury." State v. Rodriguez-Perez, 1 Wn. App. 2d 448, 460, 406 P.3d 658 (2017). "Prejudicial error does not occur until such time as it is clear and unmistakable that counsel is not arguing an inference from the evidence, but is expressing a personal opinion." State v. McKenzie, 157 Wn.2d 44, 54, 134 P.3d 221 (2006) (quoting State v. Papadopoulos, 34 Wn. App. 397, 400, 662 P.2d 59 (1983)). Here, the prosecutor did not express his personal opinion as to Garrido's veracity or guilt; rather, he responded to Garrido's self-defense claim by arguing from the evidence that Garrido's version of events was not credible.

We remand to the trial court to strike the VPA from Garrido's sentence. Otherwise, we affirm his conviction.

23

Cheng, J.

WE CONCUR:

Brennan, J.                    Dwyer, J.